## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ARDEN ROW ASSETS, LLC et al.,

     Plaintiffs,

     v.

U.S. INTERNAL REVENUE SERVICE,

     Defendant.

Civil Action No. 23-2696 (JDB)

## MEMORANDUM OPINION

In 2023, plaintiffs Arden Row Assets, LLC, Basswood Aggregates, LLC, and Delwood Resources, LLC, requested through the Freedom of Information Act ("FOIA") Internal Revenue Service records related to audits of plaintiffs' 2018 tax returns. But the IRS's response did not satisfy them. As relevant here, plaintiffs contend that the IRS improperly withheld or redacted some of those records without justification. The IRS denies as much and has moved for summary judgment on the basis that its withholdings were proper under FOIA Exemptions 3, 5, and 7. In response, plaintiffs have cross-moved for summary judgment on the same issues. Because the IRS has demonstrated that each FOIA exemption applies, the Court grants the IRS's motion for summary judgment and denies plaintiffs' cross-motion.

## BACKGROUND

Plaintiffs each claimed a charitable deduction for conservation contributions on their 2018 tax returns. Compl. [ECF No. 1] ¶ 14; see 26 U.S.C. § 170. But after auditing those returns, the IRS disallowed the deductions and proposed penalties against plaintiffs for (1) negligence or disregard, 26 U.S.C. § 6662(b)(1); (2) substantial understatement of income tax, 26 U.S.C.

1

§ 6662(b)(2); (3) substantial valuation misstatement, 26 U.S.C. § 6662(b)(3); (4) gross valuation misstatement, 26 U.S.C. § 6662(h); and (5) reportable transaction understatement, 26 U.S.C. § 6662A(a). Pl.'s Statement of Undisputed Material Facts [ECF No. 25-1] ¶ 16. In response, plaintiffs challenged the penalties in United States Tax Court.[1] Plaintiffs Basswood Aggregates and Delwood Resources have since settled their Tax Court cases; Arden Row has not. Pl.'s Mem. Opp'n to Mot. for Summ. J. & Supp. Cross-Mot. for Summ. J. ("Opp'n") [ECF No. 25] at 7.

In order for the IRS to assess a tax penalty, "the initial determination of such assessment" must be "personally approved (in writing) by the immediate supervisor of the individual making such determination or" another applicable higher-level official. 26 U.S.C. § 6751(b)(1). Yet documents plaintiffs obtained during the Tax Court litigation indicated that the IRS had <u>backdated</u> this approval. Opp'n at 6–7. To find out more about the approval process that followed their audit, plaintiffs submitted a FOIA request to the IRS. Compl. ¶ 13. Plaintiffs requested records related to the penalty lead sheets prepared in connection with the audit, records related to the evaluation of plaintiffs' tax penalties, and records pertaining to the collection and production of the IRS administrative file provided to plaintiffs in connection with their Tax Court litigation. Compl. at ¶ 33.

After the IRS failed to respond to plaintiffs' FOIA request in a timely manner, plaintiffs filed this action to compel the IRS to respond to their request and disclose relevant documents. Compl. ¶ 12. This Court set a schedule for the IRS to process responsive records on December 18, 2023, <u>see</u> Minute Order of Dec. 18, 2023, and production was completed on November 22,

---

[1] See <u>Arden Row Assets, LLC, Nat. Aggregates Partners, LLC, P'ship Representative v. Comm'r</u>, Tax Court Docket No. 3817-23; <u>Basswood Aggregates, LLC, Basswood Partners, LLC, P'ship Representative v. Comm'r</u>, Tax Court Docket No. 3820-23; <u>Delwood Res., LLC, Delwood Partners, LLC, P'ship Representative v. Comm'r</u>, Tax Court Docket No. 3821-23.

2024, see Joint Status Report [ECF No. 19].  The IRS identified 3,342 pages of responsive records

and released 1,216 pages in full, while withholding 1,942 pages in full and 164 pages in part under

various FOIA Exemptions.  Mot. for Summ. J. ("Mot.") [ECF No. 21-1] at 8–9.  The IRS has now

moved for summary judgment, contending that their search was adequate, that the withheld records

fell within FOIA exemptions, and that they properly segregated the exempt and non-exempt

materials.  Id. at 3.  Plaintiffs oppose the IRS's motion and have cross-moved for summary

judgment, arguing that the withheld records did not fall within any FOIA exemption.  Opp'n at 1–

2.

## STANDARD OF REVIEW

To prevail on summary judgment, the moving party must show that "there is no genuine

dispute as to any material fact" and that it is "entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  Where parties file cross-motions for summary judgment, "neither party waives the

right to a full trial on the merits by filing its own motion; each side concedes that no material facts

are at issue only for the purposes of its own motion." McKenzie v. Sawyer, 684 F.2d 62, 68 n.3

(D.C. Cir. 1982).

In the FOIA context, the Court may grant an agency summary judgment if the agency

supplies evidence that "requested material falls within a FOIA exemption."  Petroleum Info. Corp.

v. U.S. Dep't of Interior, 976 F.2d 1429, 1433 (D.C. Cir. 1992).  The Court may award summary

judgment based on information provided by the agency in affidavits or declarations that, in

"reasonably specific detail, demonstrate that the information withheld logically falls within the

claimed exemption, and are not controverted by either contrary evidence in the record nor by

evidence of agency bad faith."  Mil. Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).

However, if, "even on the agency's version of facts," the material "falls outside the proffered

exception," the Court must grant the FOIA plaintiff summary judgment.  Petroleum Info. Corp., 976 F.2d at 1433.

**ANALYSIS**

FOIA generally requires that federal agencies provide members of the public with records unless those records fall within one of nine exemptions.  This case turns on Exemptions 3, 5, and 7.  Exemption 5 incorporates privileges available to federal agencies in civil litigation, including, as relevant here, the deliberative process privilege and attorney-client privilege.  5 U.S.C. § 552(b)(5).  Exemption 3 is an umbrella provision that protects material that other statutes exempt from disclosure.  Id. § 552(b)(3).  Exemption 7 shields "records or information compiled for law enforcement purposes."  Id. § 552(b)(7).  Here, the IRS's invocation of each exemption is proper.

## I.    Exemption 5

### A.    Deliberative Process Privilege

FOIA Exemption 5 provides that federal agencies need not disclose "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  This protection includes a "deliberative process" privilege that shields "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001) (internal quotation marks omitted).  The deliberative process privilege serves to "encourage candor, which improves agency decisionmaking," U.S. Fish & Wildlife Serv. v. Sierra Club, Inc., 592 U.S. 261, 687 (2021), because "officials will not communicate candidly among themselves if each remark is a potential item of discovery," Klamath, 532 U.S. at 8–9; see also Tax Analysts v. IRS, 117 F.3d 607, 617 (D.C. Cir. 1997) ("Exemption 5, and the deliberative process privilege,

4

reflect the legislative judgment that the quality of administrative decision-making would be seriously undermined if agencies were forced to operate in a fishbowl." (internal quotation marks omitted)).  To invoke the privilege, an agency must show that the withheld documents are both "predecisional" and "deliberative."  Coastal States Gas Corp. v. U.S. Dep't of Energy, 617 F.2d 854, 868 (D.C. Cir. 1980).

Here, plaintiffs do not contest that the deliberative process privilege applies to the withheld documents in the first instance.  See Opp'n at 15–22.  Instead, they contend that alleged IRS misconduct—the backdating of required approval for the proposed penalties—"vitiates the FOIA exemption," id. at 3, under the so-called "government misconduct exception" to the deliberative process privilege, see id. at 16.

The Court is unpersuaded.  This Court takes no position on whether such an exception exists, but there are good reasons to be skeptical—and the arguments against the exception illustrate why there must be a high bar to invoke it.  The D.C. Circuit has never endorsed a government misconduct exception to the deliberative process privilege for FOIA requests.  See Protect Democracy Project, Inc. v. Nat'l Sec. Agency, 10 F.4th 879, 888–89 (D.C. Cir. 2021) ("There is no precedent binding on this court that recognizes the misconduct exception . . . under Exemption 5.").  Judges in this district are divided on the issue.  Compare Nat'l Whistleblower Ctr. v. HHS, 903 F. Supp. 2d 59, 67 (D.D.C. 2012) ("[T]he government-misconduct exception may be invoked to overcome the deliberative-process privilege in a FOIA suit.") with Jud. Watch, Inc. v. U.S. Dep't of State, 241 F. Supp. 3d 174, 183 (D.D.C. 2017) ("[T]he only applicable Circuit authority militates against recognizing a government misconduct exception in a FOIA case.").

Plaintiffs mainly rely on In re Sealed Case ("In re Sealed Case III"), where the D.C. Circuit held that the common-law deliberative process privilege in the context of a grand jury subpoena

could be overcome by a sufficient "showing of need" to "shed light on government misconduct." 121 F.3d 729, 737–38 (D.C. Cir. 1997).  But the D.C. Circuit expressly declined to extend that reasoning to the FOIA context because "the particular purpose for which a FOIA plaintiff seeks information," i.e., uncovering misconduct, "is not relevant in determining whether FOIA requires disclosure."  Id. at 737 n.5; see Protect Democracy Project, 10 F.4th at 888–89.  More generally, FOIA Exemption 5's protection of privileged materials "is not subject to the same exceptions to which the common law privilege is susceptible."  Wright v. Admin. for Child. & Fams., Civ. A. No. 15-218 (BAH), 2016 WL 5922293, at *11 (D.D.C. Oct. 11, 2016) (rejecting a government misconduct exception to the FOIA deliberative process privilege).  This is because Exemption 5 protects material that "would not normally be discoverable in civil litigation against an agency," thus shielding some materials that might be disclosed in civil litigation because of abnormal "case-specific exceptions."  Stonehill v. IRS, 558 F.3d 534, 539 (D.C. Cir. 2009) (emphasis added) (quoting Ryan v. U.S. Dep't of Just., 617 F.2d 781, 790 (D.C. Cir. 1980)).  Finally, a government misconduct exception would cut against the purpose of the deliberative process privilege, which stems from the notion that shielding deliberations encourages candor, thereby reducing the risk of misconduct.

But if a government misconduct exception exists, it would be narrow and would apply only in cases of "extreme government wrongdoing."  See Nat'l Whistleblower Ctr., 903 F. Supp. 2d at 68–69 (internal quotation marks omitted).  The judges in this District that have recognized the exception have required plaintiffs to show unambiguous "egregious" misconduct and "nefarious motives."  Jud. Watch, Inc. v. U.S. Dep't of State, 285 F. Supp. 3d 249, 254–55 (D.D.C. 2018).  Moreover, it cannot simply be that the records reveal some sort of underlying misconduct; the records themselves must constitute egregious misconduct. See ICM Registry, LLC v. U.S. Dep't

of Com., 538 F. Supp. 2d 130, 133 (D.D.C. 2008) (finding that courts only applied the exception in cases where "[t]he very discussion . . .  was an act of government misconduct" and "evidence of a serious breach of the responsibilities of representative government").  Hence, plaintiffs may not leverage a single instance of employee misconduct to compel broad disclosures of related, but non-culpable, agency operations.  Otherwise, the government misconduct exception would chill efforts to analyze and correct prior wrongdoing.

Plaintiffs' allegations do not clear this high bar.  To begin, plaintiffs do not allege that the IRS violated any law.  While they accuse the IRS of improperly backdating the required supervisory approval for the penalties assessed against them, Opp'n at 5, they acknowledge that the backdating was legally harmless because the actual date when the IRS agents secured supervisory approval for their penalties was still within the statutory window for approval.  See Reply Supp. Cross-Mot. Summ. J. [ECF No. 30] ("Pls.' Reply") at 8.  As two courts of appeal have held (and as plaintiffs do not contest), an IRS agent's initial determination need only be approved by the time the supervisor either assesses the penalties or otherwise loses discretion over the penalty assessment.  Kroner v. Comm'r, 48 F.4th 1272, 1276 (11th Cir. 2022); Laidlaw's Harley Davidson Sales, Inc. v. Comm'r, 29 F.4th 1066, 1071 (9th Cir. 2022).  Neither of those triggering events occurred here because the IRS secured supervisory approval before distributing the Notice of Proposed Partnership Adjustment (i.e., before the supervisor assessed the penalties). See Compl. ¶¶ 28–31.  This, alone, may doom plaintiffs' claim because it is unclear that the government misconduct exception could ever be invoked when the underlying conduct is not illegal.

Acknowledging that the IRS obtained sufficient approval, plaintiffs argue that the government misconduct exception applies because the IRS agent had a nefarious state of mind.

Plaintiffs claim that the IRS "believed that they needed" earlier supervisory approval because since-overturned Tax Court cases held that supervisory approval was required at the time of the IRS's initial penalty determination.  Pls.' Reply at 8 (emphasis in original); see also Laidlaw's, 29 F.4th at 1070 (explaining Tax Court precedent).  They further suggest that the IRS agent's request that his supervisor backdate the penalty approvals could only have been animated by duplicitous intent.  Opp'n at 18–21.

The IRS, meanwhile, argues that the agents' behavior is more easily ascribed to "incompetence" than a desire to "perpetrate a fraud scheme."  Opp'n Cross-Mot. Summ J. & Reply Supp. Mot. Summ. J. ("Def.'s Reply") [ECF No. 27] at 1.  The Court agrees.  The agent asked their supervisor to backdate the approval to a date when the supervisor had sent a cursory email saying "I approve penalties."  Id. at 5.  Although this email was not actually sufficient to confer approval at the earlier date, it evinces an attempt to comply with the law.  Further, the IRS disagreed with the aforementioned Tax Court rulings, appealed them, and prevailed.  Id. at 3.  Finally, longstanding IRS guidance and litigation positions are consistent with the idea that supervisory approval is not required until the final penalty assessment.  Id. at 3–4.

In sum, the legally harmless act of backdating records here, especially where there are innocuous alternative reasons for doing so, does not rise to the level of egregious misconduct required to satisfy the government misconduct exception (to the extent any such exception exists).  Accordingly, the IRS properly applied the deliberative process privilege.

Even if the backdating was sufficient to trigger the government misconduct exception, the IRS would still not have to disclose the withheld records.  Plaintiffs do not contest that "the vast majority of the records withheld under the deliberative process privilege have no connection to the misapplied date whatsoever."  Def.'s Reply at 11.  And even for those records related to the

backdating, the government misconduct exception only applies to records where the communications themselves display the government's egregious behavior. See ICM Registry, 538 F. Supp. 2d at 134. Hence, even if the exception applied here, plaintiffs would not be entitled to wide-ranging information about their audit.

### B.    Attorney-Client Privilege

Exemption 5 also incorporates the attorney-client privilege, which covers "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 252 (D.C. Cir. 1977). As with the deliberative process privilege, plaintiffs do not argue that the IRS improperly applied the attorney-client privilege in the first instance but instead claim that the IRS's backdating satisfies an exception to the privilege. In this instance, plaintiffs invoke the crime-fraud exception. But once again, plaintiffs are wrong.

The crime-fraud exception prevents agencies from claiming attorney-client privilege over documents that are "made in furtherance of a crime, fraud, or other misconduct." In re Grand Jury, 475 F.3d 1299, 1305 (D.C. Cir. 2007) (internal quotation marks omitted). To invoke the exception, the plaintiff must make a prima facie showing that the "client made or received the otherwise privileged communication with the intent to further an unlawful or fraudulent act," and "that the client actually carried out the crime or fraud." In re Sealed Case ("In re Sealed Case IV"), 223 F.3d 775, 778 (D.C. Cir. 2000) (internal quotation marks omitted).

Without a crime or fraud, plaintiffs cannot invoke the crime-fraud exception. As described above, plaintiffs have not alleged that the IRS agent's backdating was illegal. The IRS supervisor provided timely approval of the agent's penalty assessments within the statutory window and the

plaintiffs have not demonstrated that the IRS intended to "perpetrate a fraud scheme."  Opp'n at 13.  Accordingly, the IRS properly applied the attorney-client privilege.

### C.    Waiver

Lastly, plaintiffs argue that the IRS waived both attorney-client privilege and deliberative process privilege as to certain records because it disclosed those records during plaintiffs' audit and Tax Court cases.  The IRS has since released previously disclosed records without asserting Exemption 5.  Def.'s Reply at 11–12.  As a result, plaintiffs' waiver argument regarding these particular records is moot.

Newly in their reply brief, plaintiffs argue that the IRS committed subject-matter waiver of attorney-client privilege by discussing the audit settlement process in Tax Court.  Pls.' Reply at 12–14.  "As the D.C. Circuit has consistently held," district courts "should not address arguments raised for the first time in a party's reply."  Wultz v. Islamic Republic of Iran, 755 F. Supp. 2d 1, 37 (D.D.C. 2010) (quoting Jones v. Mukasey, 565 F.Supp.2d 68, 81 (D.D.C. 2008)).  Although plaintiffs briefly raised waiver in their cross-motion for summary judgment, Opp'n at 22, subject matter waiver, a distinct argument with its own doctrine and considerations, is raised for the first time in plaintiffs' reply.  See Pls.' Reply at 12–14; cf. Steele v. United States, Civ. A. No. 14-1523 (RCL), 2023 WL 6215790, at *11 (D.D.C. Sept. 25, 2023) ("[A] summary assertion in the initial brief, made without argument or citations, does not suffice to preserve the more fine-grained argument.").  Accordingly, plaintiff's arguments are forfeit.  Nevertheless, because subject-matter waiver is connected to plaintiffs' other waiver arguments, the Court considers plaintiffs' subject-matter waiver claim and finds it meritless.

Subject-matter waiver is the doctrine by which a party who discloses privileged attorney-client communications may waive the privilege for those communications and all communications

relating to the same subject matter.  In re Sealed Case ("In re Sealed Case I"), 676 F.2d 793, 809 & n.54 (D.C. Cir. 1982).  This doctrine is based on the understanding that a party should not be able to wield privileged information as a sword in one context only to then hide behind privilege as a shield in another.  See Gen. Elec. Co. v. Johnson, Civ. A. No. 00-2855 (JDB), 2006 WL 2616187, at *18 (D.D.C. Sept. 12, 2006).

To preserve attorney-client privilege, parties must "jealously guard[]" their privileged communications.  In re Sealed Case ("In re Sealed Case II"), 877 F.2d 976, 980 (D.C. Cir. 1989). Disclosure of those communications, even inadvertently, may result in a waiver of privilege.  Id. However, disclosures that merely incidentally mention the existence of an attorney-client communication do not vitiate the privilege.  In particular, an "averment that lawyers have looked into a matter does not imply an intent to reveal the substance of the lawyers' advice."  United States v. White, 887 F.2d 267, 271 (D.C. Cir. 1989).  That is because when a party "neither reveals substantive information, nor prejudices [their opponent's] case, nor misleads a court by relying on an incomplete disclosure, fairness and consistency do not require the inference of waiver."  Id.

Plaintiffs claim that "IRS attorneys testified about their internal discussions regarding the backdating," thereby waiving attorney-client privilege as to all relevant records.  Pls.' Reply at 13. That is incorrect.  Plaintiffs merely cite portions of the Tax Court transcript where IRS attorneys mentioned conversations about the audit and/or backdating.  But these amount to general assertions "lacking substantive content" that an attorney examined a "certain matter," which is not sufficient to waive privilege.  White, 887 F.2d at 271.  The cited communications are devoid of the type of confidential legal advice necessary to waive privilege.  See Tax Ct. Tr. I [ECF No. 30-2] at 55–56 (describing the mere existence of settlement discussions); Tax Ct. Tr. II [ECF No. 30-3] at 82–86 (describing the attorney's lack of surprise that certain penalties were conceded); Tax Ct. Tr. III

[ECF No. 30-4] at 553 (describing that attorney worked on "proposed settlement offers"); Tax Ct. Tr. IV [ECF No. 30-5] at 575 (describing general subject matter of communications with IRS personnel); Tax Ct. Tr. V [ECF No. 30-6] at 600 (describing a general desire to "promptly resolve the case because of 6751(b) concerns").  Notably, plaintiffs cite several passages where the questioner expressly caveats that the IRS attorney should answer "[w]ithout getting into the discussions themselves."  See Tax Ct. Tr. I at 55; Tax Ct. Tr. III at 553; Tax Ct. Tr. VI at 573. And the transcripts certainly do not reflect the IRS leveraging the contents of confidential communications as a sword by which to make arguments that disadvantage plaintiffs. Consequently, the IRS properly invoked attorney-client privilege and plaintiffs have not demonstrated that subject-matter waiver applies to any of the records at issue.

Even if plaintiffs could show that attorney-client privilege was waived, it would not result in the disclosure of the records they seek.  Waiver results in disclosure only when the records at issue are "not covered by other protections," such as deliberative process privilege.  Gen. Elec., 2006 WL 2616187, at *19.  And "[t]he concept of subject-matter waiver is almost uniquely a function of the attorney-client relationship"; it does not apply to "deliberative process privilege." Id. at *17.  The second Vaughn index submitted by the IRS indicates that every document where attorney-client privilege is asserted is also protected by deliberative process privilege.  See Second Vaughn Index [ECF No. 27-3].  Accordingly, because both attorney-client privilege and deliberative process privilege apply to these records, Exemption 5 protects them from disclosure.

## II.      Exemption 3

FOIA Exemption 3 shields documents that are "specifically exempted from disclosure by statute."  5 U.S.C. § 552(b)(3).  Under that exemption, the government must identify a statute that authorizes them to withhold records and demonstrate that the records at issue fall within that

statute.  See Larson v. Dep't of State, 565 F.3d 857, 861 (D.C. Cir. 2009).  Here, the IRS identified 26 U.S.C. § 6103(e)(7), which provides that the IRS may withhold tax return information if the Secretary of the Treasury "determines that disclosure would seriously impair Federal tax administration." 26 U.S.C. § 6103(e)(7).  Then, the IRS provided a declaration from an authorized delegate of the Secretary, Teresa Trissell, stating that disclosure of certain records would "seriously impair the ability of the government to ensure the assessment and collection of the proper tax and penalties" from plaintiff Arden Row.  Decl. of Teresa Trissell [ECF No. 21-7] ("Trissell Decl.") ¶¶ 2, 8–11.

In plaintiffs' view, § 6103(e)(7) does not apply here because, while it permits withholding tax records from third parties, it "does not prevent taxpayers and their representatives from accessing the taxpayers' own tax information." Opp'n at 28 (emphasis in original).  The general statutory permission for members of partnerships to access the tax information of that partnership, plaintiffs posit, entitles them to their tax return information regardless of Secretarial approval.  Id.; see 26 U.S.C. § 6103(e)(1)(C).

Not so.  The general statutory permission to access one's own tax information in § 6103(e)(1)(C) is eclipsed by the specific prohibition in § 6103(e)(7) providing for withholding tax return information subject to Secretarial disapproval.  See RadLAX Gateway Hotel, LLC v. Amalgamated Bank, 566 U.S. 639, 645 (2012) ("It is a commonplace of statutory construction that the specific governs the general." (citation modified)); Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 183 (2012).  Plaintiffs do not cite a single case for the proposition that parties are entitled to the disclosure of their own returns, regardless of Secretarial disapproval.  That is likely because caselaw shows the opposite.  See, e.g., Nosal v. IRS, 523 F. Supp. 3d 72, 78–81 (D.D.C. 2021) (finding § 6103(e)(7) applicable to potential whistleblower

records in a taxpayer's file); <u>Sea Shepherd Conservation Soc'y v. IRS</u>, 208 F. Supp. 3d 58, 87–88 (D.D.C. 2016). And plaintiffs' reading is inconsistent with the statutory scheme that establishes the role of Secretarial disapproval as a backstop to otherwise permissible disclosures that would impair the tax system. Indeed, there may be many circumstances where allowing parties to see information about themselves could hamper tax administration. <u>See Sea Shepherd</u>, 208 F. Supp. 3d at 87–88 (finding Secretarial disapproval justified to protect confidential informants).

Plaintiffs next contend that Trissell's declaration is too conclusory to constitute a bona fide Secretarial determination. Opp'n at 25–26. That is incorrect as well. Trissell's declaration is comprehensive and provides multiple reasons why disclosure of the requested materials could impair tax administration. For one, Arden Row is engaged in Tax Court litigation against the IRS related to their "civil examinations, and this litigation involves issues addressed in records responsive to plaintiffs' FOIA requests." Trissel Decl. ¶ 9. Disclosing the records would allow Arden Row to "craft explanations or defenses" based on its knowledge of the IRS's "strategy, theories, methods, and points of focus." <u>Id.</u> ¶ 9; <u>cf.</u> <u>Georgia v. U.S. Dep't of Just.</u>, No. 23-5083, 2025 WL 2314892, at *2 (D.C. Cir. Aug. 12, 2025) (expressing concern that "parties opposed to the government" would use FOIA to "disclose the government's strategy and impressions about an ongoing case").

Because § 6103(e)(7) permits the IRS to withhold the relevant records, the IRS appropriately invoked Exemption 3.

### III.   Exemption 7

FOIA Exemption 7(A) protects records or information compiled for law enforcement purposes when disclosure "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). This includes protecting documents that would shed light

upon the government's "cases in courts, its evidence and strategies, or the nature, scope, and focus of investigations."  Agrama v. IRS, 282 F. Supp. 3d 264, 273 (D.D.C. 2017) (internal quotation marks omitted).  The IRS is a "law enforcement" agency for the purpose of Exemption 7(A).  Tax Analysts v. IRS, 294 F.3d 71, 77 (D.C. Cir. 2002).

To justify withholding materials, the IRS must "demonstrate that disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated."  Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just., 746 F.3d 1082, 1096 (D.C. Cir. 2014) (internal quotation marks omitted).  To carry its burden, the agency must show that releasing the "investigatory records while [the] case is pending would generally interfere" with the proceeding, but the agency need not make "specific factual showing[s] with respect to each withheld document that disclosure would actually interfere with a particular enforcement proceeding." Agrama, 282 F. Supp. 3d at 273–74 (internal quotation marks omitted).

Here, each document withheld under Exemption 7(A) "relates to proposed partnership tax adjustments and proposed penalties related to Arden Row," with whom the IRS is engaged in active Tax Court proceedings. Def.'s Reply at 14.  The documents include materials used in Arden Row's civil examination and email attachments reflecting IRS attorney discussions about the case. Id.  Plaintiffs acknowledge as much but argue that the IRS has not provided a sufficient explanation of why the documents would interfere with the ongoing proceedings.  See Opp'n at 26.  But the IRS has explained that divulging those records would "give premature insight into the strength of the IRS's position; elucidate which evidence the IRS's positions were based on; and reveal the nature, direction, scope and focus of the Service's case."  Def.'s Reply at 14 (citing Trissel Decl. ¶¶ 9, 10, 12).  That is enough.

The nature of the withheld records and the IRS's explanation for shielding them are sufficient to suggest that disclosure would threaten pending law enforcement proceedings. Accordingly, the IRS's invocation of Exemption 7(A) is proper.

## **CONCLUSION**

For these reasons, the Court grants IRS's motion for summary judgment and denies plaintiffs' cross-motion.  A separate Order has been issued on this date.


_____
/s/
JOHN D. BATES
United States District Judge


Dated: August 20, 2025